**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| RICHARD GAYER,                ) | No. CV 08-1153-PHX-JAT |
| )  | |
| Plaintiff,    ) | **ORDER** |
| )  | |
| vs.                           ) | |
| )  | |
| CITY OF PHOENIX, a Municipal) | |
| Corporation,  ;  and  STREET) | |
| TRANSPORTATION DEPARTMENT, ) | |
| )  | |
| Defendants.   ) | |
| )  | |
| _____) | |

Pending before the Court is the Motion to Dismiss of Defendants City of Phoenix ("Phoenix") and Street Transportation Department ("Department") (collectively "Defendants") (Doc. #7) pursuant to Fed. R. Civ. P. 12(b)(1). The Court now rules on that Motion.

**I.  FACTUAL BACKGROUND**

The relevant facts, as alleged in the Complaint, are as follows: Relying on 42 U.S.C. § 1983, Plaintiff seeks injunctive relief and declaratory judgment regarding the Defendants' alleged failure to follow its Speed Hump Program ("Program") regarding proposed construction at four intersections located in the Willo Historic District. (Plaintiff's Complaint, Doc. #1.)  The Willo Historic District is a residential neighborhood in Central Phoenix, Arizona. (Defendants' Motion to Dismiss, Doc. #7, p. 1, n. 1.)

The Speed Hump Program at issue provides in pertinent part as follows:

> The City will designate an 'affected area,' usually consisting of homes along the street where speed humps are proposed. Residents must obtain support from at least 70 percent of residents in the affected area, and must obtain support from every resident whose home is within 100 feet of a proposed speed hump.

(Complaint ¶ 8.)

Plaintiff alleges that Defendants failed to follow the above portion of the Speed Hump Program when it failed to obtain 100 percent support from all owners or residents within 100 feet of the proposed construction.[1] (Complaint ¶¶ 11, 12.) Plaintiff alleges that Defendants violated the Program by not seeking and obtaining the approval of eight specific additional properties that are located within 100 feet of the proposed construction. (Id.) Plaintiff further alleges that the City of Phoenix approved the construction at issue despite its alleged failure to obtain the required support. (Complaint ¶ 14.)

Defendants City of Phoenix and Street Transportation Department move to dismiss Plaintiff's action for lack of standing. Defendants assert that, because Plaintiff does not live within 100 feet of the proposed construction, Plaintiff lacks standing to bring these claims. Although Plaintiff claims that the proposed construction will impair his access to his property and reduce his property value, Plaintiff does not allege that he lives within 100 feet of the proposed construction or that he was entitled to participate in the petition process outlined in the Speed Hump Program. In their Motion to Dismiss, Defendants also assert that the Street Transportation Department is a non-jural entity not subject to suit and argue that

---

[1] Plaintiff takes issue with Defendants' characterization of the proposed construction as "speed humps" and states that his allegations do not involve "speed humps" but a "Streetscape Project of the Willo Neighborhood Association." The difference in characterization or name of the proposed construction, however, is not relevant to this Court's analysis. The matter at issue here is Defendants' application of the Speed Hump Program requirements to the proposed construction, whatever it might be called, and whether Plaintiff has standing to challenge Defendants' alleged failure to comply with those requirements. For purposes of clarity and uniformity, the Court will refer to the project at issue as "proposed construction."

1 Plaintiff has failed to state a claim under §1983.  The Court will address those arguments
2 here.

3     **II.**    **LEGAL STANDARD AND ANALYSIS**
4           **A.**    **NON-JURAL ENTITY**

5     Defendants first argue that the Street Transportation Department should be dismissed
6 from the action as it is a non-jural entity that is not subject to suit.  Defendants argue, as a
7 threshold matter, that Plaintiff may not bring a civil rights action against this servient
8 department as it does not enjoy a legal existence separate and distinct from the City of
9 Phoenix and has not been vested with the authority to sue or be sued.  Plaintiff does not
10 object to this argument in its Memorandum of Law Opposing Defendants' Motion to Dismiss
11 ("Response") but instead seeks leave to amend its Complaint to substitute, if necessary, the
12 Director of the Street Transportation Department.

13     This Court agrees that the Street Transportation Department should be dismissed from
14 this action as it is a non-jural sub-part of the City of Phoenix that is not subject to suit.  *See,*
15 *e.g., Murphy v. Coconino County Sheriff's Dept.*, No. CV 08-8089-PCT-DCG, 2008 U.S.
16 Dist. Lexis 83840 (Sept. 28, 2008 D. Ariz.)(finding that sub-part of county was not person
17 amenable to suit under § 1983).  To the extent Plaintiff seeks to substitute the Department's
18 Director for the Department itself, the Court declines to grant such a request as the amended
19 complaint would also be subject to dismissal for the reasons stated *infra*.  *See Saul v. United*
20 *States*, 928 F.2d 829, 843 (9th Cir. 1991)("A district court does not err in denying leave to
21 amend where the amendment would be futile or where the amended complaint would be
22 subject to dismissal.")

23           **B.**    **STANDING**

24     Defendants also argue that Plaintiff lacks standing to seek injunctive relief and
25 declaratory judgment based on the alleged violations of the Speed Hump Program.
26 "Standing is a threshold jurisdictional question in every federal case."  *Bruce v. United*
27 *States*, 759 F.2d 755, 757 (9th Cir. 1985).  In resolving the issue of standing, courts are bound
28 by a constitutionally imposed jurisdictional restraint in Article III of the United States

Constitution, which limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 470-71, 102 S. Ct. 752, 757-58, 70 L. Ed. 2d 700 (1982). When presented with a claim for declaratory judgment, federal courts are likewise required to ensure the presence of an actual case or controversy. *See Rhoades v. Avon Products, Inc*. 504 F.3d 1151, 1157 (9th Cir. 2007)(citations omitted).

Courts have viewed the constitutionally imposed restraint found in Article III as requiring that, in order to have standing, the suing party must have suffered an "injury in fact." *Valley Forge Christian College*, 454 U.S. at 473. In order to satisfy Article III's standing requirements, Plaintiff bears the burden of proving that (1) he has suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged act of defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Even if the constitutional requirement of an injury in fact is met, however, a suing party may still lack standing. In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge Christian College*, 454 U.S. at 474-75. For example, a suing party must assert his or her own rights and interests and cannot base his or her claim for relief upon the legal rights or interests of others. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975); *see also, Rasmussen v. City of Lake Forest*, 404 F. Supp. 148, 154 (N.D. Ill. 1975)("one cannot sue for the deprivation of the civil rights of others"). Federal courts have generally refrained from adjudicating "'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the respective branches." *Valley Forge Christian College*, 454 U.S. at 475, quoting *Warth*, 422 U.S. at 499-500. Additionally, the suing party's

1  complaint must fall within the zone of interest to be protected or regulated by the statutory
2  provision or the constitutional guarantee in question; in other words, the suing party must fall
3  within the class of persons the provision in question was designed to protect. *See Thinket Ink*
4  *Info Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004).

### 1.     **Injury In Fact**

6  In the instant matter, Plaintiff alleges that Defendants have violated their own
7  Speed Hump Program by failing to include eight specific properties in the petition
8  process, by requiring less than 100 percent support from all properties within 100 feet of
9  the proposed construction, and by approving the proposed construction at two
10 intersections.  Plaintiff alleges that, as a result of the above, Defendants have deprived
11 him of his rights in violation of the Due Process Clause of the Constitution of the United
12 States.   Plaintiff's claimed injury is that "[t]he proposed construction will permanently
13 restrict and otherwise impair Plaintiff's access to his property and the access of all other
14 Willo homeowners to their properties, thereby reducing the value of all Willo properties
15 by at least five percent."  (Complaint ¶ 15.)

16 Although, for purposes of this Motion, this Court will assume without deciding
17 that Plaintiff has suffered an injury in fact, the Court notes that Defendants challenge
18 whether Plaintiff has suffered such an injury.  An "injury in fact" is an invasion of a
19 legally protected interest which is (a) concrete and particularized, and (b) actual or
20 imminent rather than conjectural or hypothetical.  The injury cannot be abstract but "must
21 be both real and immediate."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

22 Though this Court does not decide, for purposes of this Motion, whether Plaintiff
23 has suffered an injury in fact, the Court is inclined to agree with Defendants that
24 Plaintiff's purported injury is not actual or concrete.  Plaintiff alleges only in his
25 Complaint that his access to his property will be restricted or impaired by the proposed
26 construction and that his property value will be reduced by at least 5 percent.  Plaintiff
27 does not allege that he lives on the street where the proposed construction will take place

nor does he allege how the construction will restrict his access or reduce his property value. Because this is a Motion to Dismiss, however, the Court will construe such allegations in Plaintiff's favor and assume for purposes of this Motion only that Plaintiff has demonstrated the requisite injury. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'") *See also, Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000)(citation omitted)("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

### 2.     **Causation and Redressability**

Notwithstanding the above, however, the Court does find that Plaintiff has failed to demonstrate the requisite causation and redressability elements of his claim. Although Plaintiff claims that the proposed construction project will impair his access and reduce his property value, he does not allege that he is one of the homeowners or residents who should have been petitioned regarding the construction project nor does he assert that, in order to comply with the Program, Defendants required his approval. Plaintiff does not allege that his residence is located on a street where the construction project is to take place, and he does not allege with any certainty that the outcome of the construction project would have been different had the City followed the petition process outlined in its Speed Hump Regulation Program.

In order to establish causation, Plaintiff must demonstrate that the alleged injury is "fairly traceable to the challenged action of the defendant, and [is] not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Here, there is no dispute that Plaintiff does not live within 100 feet of any of the proposed construction projects. Plaintiff does not allege that he was entitled to and/or deprived of

- 6 -

the opportunity to participate in the approval process, and there is no dispute that Plaintiff did not have the right to sign the petitions to approve or disapprove of the construction project. Plaintiff simply was not affected by any alleged defect in the Defendants' process. Even assuming that the City had followed the petition process outlined in the Speed Hump Program, any benefit received by Plaintiff from compliance, *i.e.*, any change in the outcome or implementation of the project, would be entirely dependent upon the actions of the additional signatories to the petition. Given the foregoing, this Court finds that the connection between the Defendants' alleged non-compliance and any alleged injury is too speculative and tenuous to establish standing in this case.

Importantly, not only has Plaintiff failed to demonstrate that his alleged injury is traceable to Defendants' failure to comply with the Program, he has failed to allege that the outcome of the process would have been different if the City had followed the Program's requirements. Indeed, even if this Court were to grant Plaintiff the very relief he has requested, Defendants would not be required to obtain Plaintiff's approval before undertaking the construction project at issue. Given Plaintiff's failure to allege that Defendants' compliance with the Program would necessarily alleviate his injury, the Court finds that Plaintiff has failed to demonstrate the redressability component needed to establish standing.

In his Response to the Motion to Dismiss, Plaintiff states that he "seeks nothing more than the promised compliance with the Speed Hump Regulations as applied to the [Streetscape] Project." (Response, p. 5, 6.) Plaintiff does not allege, however, that the outcome or implementation of the construction project would have been different had the City complied with the procedures set forth in the Speed Hump Program or that compliance would have alleviated his alleged injury. Indeed, Plaintiff's Complaint fails to make any allegations regarding the resulting outcome had the City sought approval from or petitioned the additional homeowner or residents identified in Plaintiff's Complaint.

To the extent Plaintiff now asserts in his Response that he could cure any such defect in his Complaint with his proposed amendment, this Court does not agree. In his Response, Plaintiff asserts specifically that the Complaint could be amended to include allegations regarding a "comprehensive survey of the entire neighborhood" showing "less than 43 percent of those surveyed supported the Project." (Response, p. 6.) Such an allegation, however, would still fail to show the likelihood that Plaintiff's alleged injury would be cured by the requested relief.[2] The consensus of the neighborhood, or more accurately the consensus of those individuals Defendants were able to survey, is simply not relevant to Plaintiff's claim. Plaintiff's proposed amendment again fails to recognize that the only relevant individuals for purposes of such an inquiry are those individuals within 100 feet of the construction project and whose approval was required pursuant to the Program. Because Plaintiff makes no allegation regarding these particular individuals or their position on the construction project, Plaintiff cannot show that his alleged injury would be redressed by the relief he seeks.

Even if Defendants had complied with the Speed Hump Program, it is indisputable that Plaintiff would have had no input into or ability to affect Defendants' decision to implement the construction process at issue. Given that Plaintiff is not within the group of residents whose approval was required under the Speed Hump Program, Plaintiff does not have standing to pursue a claim that Defendants failed to follow the requirements of that Program. *See, e.g., Bailey v. Patterson*, 369 U.S. 31, 82 S. Ct. 549, 7 L. Ed. 2d 512 (1962)(one cannot sue for the alleged deprivation of the civil rights of others).

Given these circumstances, the Court views Plaintiff's Complaint as something more akin to a generalized grievance. Generalized grievances, however, are not sufficient to establish standing. *Lance v. Coffman*, 549 U.S. 437, 127 S. Ct. 1194, 1196, 167 L. Ed.

---

[2]For this reason, the Court will not grant Plaintiff leave to amend his Complaint as requested. *See Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996)(district court "need not accommodate futile amendments").

- 8 -

2d 29 (2007), quoting *Lujan*, 504 U.S. at 573-74 ("a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy"). Plaintiff's discussion regarding the Defendants' failure to follow promised procedures – procedures that undisputedly do not involve or apply to him – further illuminate the nature of his claim. Because Plaintiff has failed to establish both the constitutional and prudential components of standing, this Court concludes that dismissal is appropriate.

### C. FAILURE TO STATE A CLAIM UNDER § 1983

Finally, Defendants argue that Plaintiff has failed to state a claim under § 1983 because Defendants did not owe Plaintiff any due process much less deprive him of due process. Finding that Plaintiff lacks standing to pursue a claim under § 1983 against Defendants, the Court does not reach the issue of whether Plaintiff has failed to state a claim under § 1983 and denies that portion of Defendants' Motion to Dismiss as moot and without prejudice.

Accordingly,

**IT IS ORDERED GRANTING** Defendants' Motion to Dismiss (Doc. # 7).

DATED this 31st day of December, 2008.

_____
James A. Teilborg
United States District Judge